UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,                            No. 1:19-cr-00081

      v.                                    Hon. Janet T. Neff
                                            U.S. District Judge

ANTHONY OZOMARO,

        Defendant.
                                         /

**GOVERNMENT'S RESPONSE TO COURT'S ORDER ON RESOLUTION
PROCEEDING DEFENDANT'S FAILURE TO APPEAR AT TRIAL**

On June 16, 2020, this case was set to start trial. The defendant, Anthony Ozomaro, refused to be brought to court from the Newaygo County Jail and did not appear. The Court subsequently dismissed the jury pool, adjourned the trial, and ordered the government and standby counsel to submit additional briefing on: (1) the propriety of proceeding to trial with Defendant in absentia; (2) the impact on the requirements of the Speedy Trial Act, 18 U.S.C. § 3161; (3) the potential for dismissing this case in light of other pending state charges against defendant; and (4) any other options for proper resolution.

**I.    BACKGROUND**

On April 10, 2019, the grand jury returned an indictment charging defendant Anthony Ozomaro with possession with intent to distribute more than fifty grams of methamphetamine. (R.4, PageID.9.) On April 23, 2019, U.S. Magistrate Judge Philip J. Green ordered the defendant detained. (R.17, PageID.35.) On May 7,

2019, defendant filed a motion to suppress. (R.21, PageID.60.) On August 21, 2019, the defendant filed a motion for a competency evaluation pursuant to 18 U.S.C § 4247(c). (R.34, PageID.97.) On August 23, 2019, the Court granted the defendant's motion for competency evaluation. (R.36, PageID.110.) On February 2, 2020, the Court found the defendant competent to stand trial following a contested hearing. (R.62, PageID.192.)

During the competency hearing, the defendant asked to represent himself. (R.63, PageID.193.) U.S. Magistrate Judge Phillip J Green conducted a colloquy of the defendant and found that the defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel and granted defendant's request to represent himself. (*Id.*) The Court appointed Mr. Sean Tilton as standby counsel. (*Id.*) On March 12, 2020, this Court denied the defendant's motion to suppress. (R.67, PageID.197.) On June 8, 2020, the Court held a final pretrial conference and trial was noticed to begin June 16, 2020. (R.85, PageID.272.)

On June 16, 2020, the defendant refused to be brought to court and did not appear. The Court subsequently dismissed the jury pool and adjourned the trial. The Court granted the government's oral motion to toll the Speedy Trial clock until the issue of the commencement of trial is resolved. (R.97, Page.ID.359.) The Court also appointed Joanna Kloet as co-standby counsel. (*Id.*) A status conference is set for July 24, 2020. (*Id.*)

## II. LEGAL ARGUMENT

### A. Ozomaro Must Be Physically Present At The Commencement of Trial.

Federal Rule of Criminal Procedure 43 provides, in pertinent part, that "[a] defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence." A defendant's right to be physically present at every stage of his trial "has a longstanding tradition in this country's criminal jurisprudence, with roots in both the Due Process Clause and the Confrontation Clause of the Sixth Amendment." *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008) (citing *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). That right, however, is not absolute.

There are two exceptions to the general rule against trials in absentia. First, in noncapital trial, a defendant may waive his right to be present "if, *after the trial has begun in his presence*, he voluntarily absents himself." *Crosby v. United States*, 506 U.S. 225 (1993) (emphasis added); *see also* Fed.R.Crim.P. 43(b). Second, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343; *see also* Fed.R.Crim.P. 43(c)(1)(C).

While there's nothing talismanic about the commencement of a trial as compared to the later, even more substantive portions of trial, there are practical

3

reasons for distinguishing between absence before and absence during a trial. *Crosby*, 506 U.S. at 261. Generally, the costs of suspending a trial that is already under way are far greater than the costs of postponing a trial not yet begun. *Id*. In addition, a defendant's initial presence serves to assure that any waiver to his physical presence at trial is knowing. *Id*; *see United States v. Bradford*, 237 F.3d 1308 (11th Cir. 1999) (After a jury was selected, but not sworn in, the defendant refused to leave her cell. Because the defendant attended jury selection, the trial had "commenced" for purposes of Rule 43(b) and the defendant's voluntary absence did not preclude the trial from proceeding.)

Rule 43's requirement that a defendant be present at the commencement of trial instructs *when* the defendant must be physically present, but not *where* a defendant must be physically present. Two circuits have held that a trial may start where a defendant is initially present, even if that location is not a courtroom. *See United States v. Sterling*, 738 F.3d 228, 236 (11th Cir. 2013) (holding that the trial started for purposes of Rule 43 when a combative defendant refused to enter the courtroom on the day of jury selection, so the judge, court reporter, and counsel met him in an interview room, where the defendant waived his right to attend trial any further.); *see also United States v. Shanks*, --F.3d--, No. 18-3628, 2020 WL 3168516, at *4 (June 15, 2020) (holding that where a judge travelled to the jail with counsel and a court reporter to obtain the defendant's knowing waiver of his right to be

4

present at trial, and jury selection occurred later that same day, satisfied Rule 43's "initially present" requirement.)

Ozomaro can waive his right to be physically present at trial, but only after the trial has commenced *in his presence*. In order to comply with the straightforward text of Rule 43, Ozomaro must be physically present in the courtroom at the commencement of trial. Alternatively, the Court, along with a court reporter and counsel, can travel to wherever Ozomaro is physically located to commence trial proceedings. Once physically present at the commencement of his trial, Ozomaro can then waive his right to his continued physical presence. Or, after the trial has begun, should Ozomaro be present in the courtroom and decide to engage in disorderly or disruptive behavior, the Court may warn him that he will be removed from the courtroom for disturbing behavior, and do so if Ozomaro persists in conduct that justifies his removal.

### 1. The Court May Use Restraints To Ensure Ozomaro's Physical Presence In The Courtroom At The Commencement Of Trial.

The Court may keep a defendant in the courtroom and have him shackled or gagged, or both, in order to prevent disruptive behavior. *Allen*, 397 U.S. at 343-44. In making a determination about shackling a defendant, the court should consider (1) the defendant's record, his temperament, and the desperateness of his situation; (2) the state of both the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security. *Lakin v. Stine*, 431 F.3d 959 (6th Cir. 2005) (*citing Kennedy v. Cardwell*, 487 F.2d 101, 110-11 (6th Cir. 1973). No defendant should be tried

while shackled and gagged except as a last resort. *Allen*, 397 U.S. at 344. Therefore, if the Court orders a defendant shackled or gagged, it must make a full statement on the record of the reasons for the restraints and the defendant should be given an opportunity to respond to the reasons presented. *Deck v. Missouri*, 544 U.S. 622 (2005).

Here, based on Ozomaro's refusal to leave his cell for trial, it is foreseeable that he may again refuse to attend subsequent trial proceedings. However, as discussed above, Rule 43 requires that the defendant be physically present for the commencement of trial. Therefore, as a last resort, the Court may order that Ozomaro be shackled and brought into the courtroom so that he is physically present for the commencement of his trial. Outside the view of the jury pool, the Court should make a record of the reasons for the restraints and give Ozomaro a chance to respond. If the Court determines that the shackling is necessary, no less restrictive means are sufficient, and takes precautions to prevent the jury pool from seeing the shackles, the jury selection should commence. *See Bell v. Wolfish*, 441 U.S. 520 (1979). At this point, if Ozomaro refuses to appear at trial, or continues his disruptive behavior, this would constitute a knowing waiver of his right to be physically present and the Court may order him expelled from the courtroom.

### 2. Impact Of Pro Se Representation.

There is a unique nuance to the analysis of Ozomaro's presence at trial because he is proceeding pro se. Importantly, the trial court is empowered to require that standby counsel replace the defendant in the presentation of the defense case if the

6

trial court concludes that the defendant should no longer be allowed to proceed pro se. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (noting that a defendant's right to self-representation is not a license to abuse the dignity of the courtroom). The *Faretta* Court used *Illinois v. Allen* to explain this restriction on self-representation. *Allen* held that an "obstreperous defendant" could be removed from the courtroom "until he promises to conduct himself properly." *Allen*, 397 U.S. at 343-44. If a defendant may be removed from a courtroom for his disorderly behavior and waive his right to be present at trial, so too can he waive his right to act pro se and thus have appointed standby counsel act in his stead while he is removed from the courtroom. *United States v. Pryor*, 842 F.3d 441, 450 (6th Cir. 2016); *Faretta*, 422 U.S. at 834 n.46. Prior to ejecting a disruptive pro se litigant from the courtroom, the pro se defendant should first be warned that any further disruption in the court would deny him the right to proceed pro se and standby counsel will be directed to take over. *Badger v. Cadwell*, 587 F.2d 986 (9th Cir. 1978).

If Ozomaro continues to refuse to appear at trial, or engages in disorderly behavior and waives his right to be present at trial, the Court is well within its discretion to instruct Ozomaro's appointed co-standby counsel to take over. However, Ozomaro's disruptive behavior does not forever waive his right to self-representation or physical presence at trial. *Pryor*, 842 F.3d at 451. Ozomaro could reclaim his right to return to the courtroom, by assuring the Court that he will not engage in inappropriate conduct. *See Allen*, 397 U.S. at 340-41 (defendant agreed to behave and was permitted to return; he was again thrown out for disruption and then

readmitted once again when he made a new promise to behave.) Accordingly, if Ozomaro is expelled from the courtroom, the Court should periodically check with Ozomaro to see if he would like to return to the courtroom and makes a good faith showing that he will not disrupt the proceedings.

### B. The Speedy Trial Clock Is Properly Tolled.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy … trial." U.S. Const. amend. VI. The Speedy Trial Act strengthens this constitutional mandate by establishing time limits for completing the various stages of a federal criminal prosecution. *See* 18 U.S.C. §§ 3161–3174. Among these limits is an obligation that the trial of a defendant commence within seventy days from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The Speedy Trial act also requires the trial of "a detained person who is being held in detention solely because he is awaiting trial," 18 U.S.C. § 3164(a)(1), to "commence not later than ninety days following the beginning of such continuous detention," *id.* § 3164(b). For purposes of the Speedy Trial Act, a jury trial commences with the beginning of voir dire. *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984); *accord United States v. Mentz*, 840 F.2d 315, 326 n.21 (6th Cir. 1988).

Section 3161(h) lists eight categories of delay that are excluded from computations under the 70-day indictment-to-trial rule and the 90-day detention-to-trial rule. 18 U.S.C. §§ 3161(h), 3164(b). Section 3161(h)(3) makes excludable any

8

period of delay resulting from the absence or unavailability of the defendant. A defendant is considered "absent" when his presence for trial cannot be obtained by due diligence or he resists appearance at, or being returned for, trial. 18 U.S.C. § 3161(h)(3)(B). Further, when a defendant is "absent" on the day of trial and his next appearance before the court is not more than 21 days later, the period through the subsequent appearance plus an additional 21 days is excluded. *See* 18 U.S.C. § 3161(k)(2). If the defendant's next appearance before the court is more than 21 days after the date of trial, a new 70-day clock starts at the subsequent appearance. *See id.* § 3161(k)(1).

On June 16, 2020, this case was set to begin trial. On this date, Ozomaro refused to leave his jail cell at the Newaygo County jail, where he is being held in pretrial detention. Ozomaro's willful absence on the first day of trial triggered Section 3161(h)(3)(B), an express category of delay that is excludable from computation of the speedy trial clock. Ozomaro's next appearance before this Court is scheduled for July 24, 2020, the date that the Court set for a status conference in this case. (*Id.*) This status conference is scheduled for 29 days after the date originally set for trial. Therefore, pursuant to the statute, a new 70-day speedy trial clock will start at the July 24, 2020, appearance. *See* 18 U.S.C. § 3161(k)(1).

### C. The Government Will Not Dismiss The Case.

In addition to the federal charge of possession with intent to distribute more than fifty grams of methamphetamine, Ozomaro is also facing state charges in Kalamazoo, Michigan, for the murder of his ex-girlfriend (Case No. 19-1312-FY).

9

The Court asked the government to consider the potential for dismissing the federal drug trafficking case in light of the pending state charges against Ozomaro.

A grand jury returned an indictment against Ozomaro for the charge he now faces in federal court. (R.4, PageID.9.) At the time of his indictment, Ozomaro was in state custody on charges that he fled from the police (Case No. 19-0355-FH) and under investigation for the murder of his ex-girlfriend. Due to his state custody, Ozomaro was brought to this Court by writ to answer the charges on the indictment. (R.7, PageID.14.) Ozomaro's refusal to appear for trial does not change the validity or importance of the federal drug trafficking case still pending against him. Dismissing the federal charge against Ozomaro because of his refusal to come to trial would have untoward consequences; it would encourage other defendants to engage in similar obstructionist misconduct, run contrary to the rule of law, and invalidate the true bill returned by the federal grand jury.

Given Ozomaro's refusal to appear for his federal trial, the government consulted with the assistant state prosecutor in his pending murder case, to ask if the State would like to proceed with the murder trial in advance of the federal drug trafficking case. The assistant state prosecutor stated that he preferred the federal case reach resolution before moving forward with the state murder case. He reasoned that Ozomaro is currently in federal custody and stated that due to the novel corona virus pandemic, there would be no felony jury trials in Kalamazoo until at least October 2020.

For these reasons, the government will not dismiss the federal case.

## III. CONCLUSION

For the reasons stated above, Ozomaro can waive his right to be physical present at trial, but only after the trial has commenced in his presence; the speedy trial clock is properly tolled, and a new 70-day speedy trial clock will start at the next scheduled appearance; and the government will not dismiss the federal case against Ozomaro.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: June 25, 2020                /s/ Erin K. Lane
ERIN K. LANE
STEPHEN P. BAKER
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404