UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        Case No. 1:19-CR-81

v.

        Hon. Janet T. Neff

ANTHONY OZOMARO,        United States District Judge

        Defendant.
_____/

## DEFENDANT'S RESPONSE TO COURT'S ORDER

On June 16, 2020, Anthony Ozomaro's trial was scheduled to begin. Staff at the Newaygo County Jail reported that Mr. Ozomaro refused to leave his cell. The trial did not begin and the Court ordered the government and Mr. Ozomaro's standby counsel to brief: (1) the propriety of proceeding to trial with Defendant in absentia; (2) the impact on the requirements of the Speedy Trial Act, 18 U.S.C. § 3161; (3) the potential for dismissing this case in light of other pending state charges against defendant; and (4) any other options for a proper resolution.

    **I.**    **Background Information**

On April 10, 2019, Anthony Ozomaro was charged with possession with intent to distribute more than 50 grams of methamphetamine. Undersigned counsel was appointed to represent Mr. Ozomaro. On August 21, 2019, counsel requested a competency evaluation of Mr. Ozomaro, which was granted. Mr. Ozomaro was found to be competent. After being found competent, Mr. Ozomaro requested to represent himself. The Court granted his request

after finding that his waiver of his rights to counsel was knowing and voluntary. Undersigned counsel was appointed as standby counsel.

Trial was set for June 16, 2020. During the final pretrial conference held on June 8, 2020, Mr. Ozomaro stated that he would not attend his trial. On the morning of the trial, June 16, 2020, jail staff reported that Mr. Ozomaro refused to be brought to the courthouse from the Newaygo County Jail in White Cloud, Michigan. Mr. Ozomaro did not appear in the courtroom. Standby counsel, at the court's direction, attempted to contact Mr. Ozomaro at the jail. Standby counsel attempted to contact Mr. Ozomaro by video conference and phone, however, the jail reported that Mr. Ozomaro refused to leave his cell. Standby counsel was not able to communicate directly with Mr. Ozomaro on that day.

The court dismissed the jury pool, adjourned the trial, and set up a status conference for July 24, 2020. The court directed standby counsel and the government to submit additional briefings. Standby counsel has not been able to communicate with Mr. Ozomaro in-person (the jail is not allowing visitors due to COVID-19), by phone, or by video conference since June 15, 2020.

## II.     The Propriety of Proceeding to Trial With Defendant in Absentia

Defendant's right to be present at his trial is a bedrock constitutional right rooted both in the Fifth Amendment Due Process Clause and the Confrontation Clause of the Sixth Amendment. *United States v. Gibbs*, 182 F.3d 408, 436 (6th Cir. 1999); *United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011); *Illinois v. Allen*, 397 U.S. 337, 339, 90 S.Ct. 1057 (1970). The right is protected under the Constitution as well as by Rule 43 of the Federal Rules of Criminal Procedure. The right is not absolute and can be waived under certain

circumstances. *Id.* The court "must indulge every reasonable presumption against the loss of constitutional rights [to be present at trial]." *Allen*, 397 U.S. at 343, 90 S.Ct. 1057.

### A. Rule 43

Under Federal Rule of Criminal Procedure 43(a)(2), a defendant must be present at every trial stage, including jury empanelment and the return of the verdict. The right to be present at trial is more expansive and broader under Rule 43 than under the Constitution. *United States v. Gibbs*, 182 F.3d 408, 436 (6th Cir. 1999).

A defendant may waive his right to a continued presence at trial if he is "initially present at trial" and thereafter is voluntarily absent from trial or continues to be disruptive after the court warns him that he will be removed. Fed. R. Crim. Pro. 43(c). Specifically, Rule 43 states:

> (c) Waiving Continued Presence.
>
> (1) In General. A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:
>
>> (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial;
>>
>> (B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or
>>
>> (C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.
>
> (2) Waiver's Effect. If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence.

Fed. R. Crim. P. 43

In order to properly waive his right to be present at trial, defendant must be "initially present at trial." Fed. R. Crim. P. 43(c); see also *United States v. Benabe*, 654 F.3d 753, 771

3

(7th Cir. 2011) ("[T]he language of Rule 43 does not provide for waiver of the right to be present unless a defendant is 'initially present at trial.'"). Thus, the relevant questions become when and where the trial begins.

Courts are in agreement that trial begins the day jury selection begins. *United States v. Burke*, 345 F.3d 416, 422 (6th Cir.2003) (determining that "trial" for purposes of Rule 43 denoted the time between the empaneling of the jury and the delivery of the sentence); *United States v. Benabe*, 654 F.3d 753, 771–72 (7th Cir. 2011) (holding that "the phrase 'initially present at trial' in a jury trial must refer to the day that jury selection begins, though not to the precise moment that one or more prospective jurors enter the courtroom."); *United States v. Bradford*, 237 F.3d at 1309–10 (joining "every other circuit to address the issue" in holding that a trial commences under Rule 43 when the jury selection process begins).

In *United States v. Benabe*, 654 F.3d 753, 771–72 (7th Cir. 2011), the Seventh Circuit held that excluding a disruptive defendant the day before trial was to begin was an error under Rule 43, but that the error was harmless. In *Benabe*, two of the defendants were continuously disruptive during pretrial proceedings, asserting that the district court did not have jurisdiction over them because they were sovereign citizens. *Id.* at 761-63, 766. A day before jury selection began, the district court held a hearing and ordered that the defendants would not be permitted in the courtroom unless they promised not to be disruptive at trial. *Id.* at 761. The defendants refused to promise that and the court excluded them from trial that started the next day. *Id.* The court arranged for them to watch the trial via live video from their detention center and made clear that they could attend trial whenever they promised to behave. *Id.* Defendants did not promise to behave and the trial proceeded without them. *Id.* On appeal, the court held that the district court's order issued the day before trial began did not comply

4

with the language of Rule 43(c), but that error was harmless. *Id.* at 771-72. The court held that failure to repeat once more, the day of the trial, the already-repeated process of asking defendants to promise to behave, did not affect their substantial rights as they had ample warning that the trial would go forward without them unless they promised to behave, and were given an opportunity to come to court the morning of trial, but chose not to appear and refused to speak to their attorneys. *Id.* at 772.

As to the place where a trial can begin, two circuits have held that a trial does not necessarily have to begin in the courtroom, and can start wherever the defendant is present. In *United States v. Sterling*, 738 F.3d 228, 236 (11th Cir. 2013), the Eleventh Circuit held that for the purpose of Rule 43(c), a trial began in an interview room of a courthouse, where the judge met the defendant who refused to enter the courtroom. Similarly, the Seventh Circuit held that trial began in a jail, where the court went to meet a defendant who refused to come to the court. *United States v. Shanks*, No. 18-3628, 2020 WL 3168516, at *2 (7th Cir. June 15, 2020).

In *Sterling*, a combative defendant refused to enter the courtroom on the day of jury selection, so the judge, along with the court reporter and counsels, went to meet him in an interview room in the courthouse. *Sterling*, 738 F.3d at 233, 236. The judge explained the process to the defendant and the defendant responded that he did not understand and asserted other non-sensical responses. *Id.* at 233. The trial judge found that the defendant waived his presence at trial by his disruptive conduct. The trial proceeded without the defendant although video feed was available for defendant to watch. *Id.* On appeal, the court held that the waiver complied with Rule 43. *Id.* at 236. It held that the trial began in the interview room, when the judge met with the defendant on the same day that jury selection began. *Id.* at 236. The

5

court deemed it "absurd" to require a district court "to bring a combative defendant" into the courtroom where he might create predictable problems "with his own disruptive behavior." *Id.* at 236.

Similarly, in *Shanks*, a defendant refused to come to court the day of his trial. *United States v. Shanks*, No. 18-3628, 2020 WL 3168516, at *2-*3 (7th Cir. June 15, 2020). Anticipating the defendant's absence, the district judge, accompanied by counsel and the court reporter, went to the jail to meet the defendant. *Id.* The judge explained charges and possible penalties, and asked the defendant if he would attend his trial. *Id.* The defendant denied understanding what the judge said to him, and refused to answer questions whether he would attend the trial. *Id.* The trial started without the defendant. Each morning the defendant was given an opportunity to come to court but he remained absent. *Id.* at *3. He was convicted and sentenced in absentia. *Id.* at *3. The case was upheld on appeal. The court held that the defendant's trial started at the jail, where the judge met the defendant on the same day that jury selection began in court, so the timing was satisfied. *Id.* at *4. It also held that the defendant's physical presence before the judge at the jail satisfied Rule 43's "initially present" requirement, emphasizing that the defendant "received an informed, face-to-face encounter with the trial judge." *Id.* at *4.

Jail staff stated that Mr. Ozomaro refused to come to the court on June 16, 2020, the day trial was supposed to start. At this point, however, Mr. Ozomaro did not waive his right to be present at his trial under Rule 43(c) because he was not "initially present at trial." First, although prospective jurors were present in a jury assembly room, and the court, the attorney for the government, and standby counsel were present and ready to go, the process of empaneling a jury did not actually commence that day, therefore the trial did not actually begin.

6

Second, Mr. Ozomaro was not "present," as he was in the local jail and the court did not communicate with him on the day of trial, as the courts did in *Benabe*, *Sterling*, and *Shanks*. Therefore, at this point, Mr. Ozomaro did not waive his right to be present under Rule 43(c) and the trial may not commence without Mr. Ozomaro's presence.

### B.     Constitution

In addition to Rule 43, the right to be present at trial is guaranteed by the Sixth Amendment and Due Process Clauses of the Fifth and Fourteen amendments. *United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011). In reviewing whether a district court ruling that a defendant's waiver of a constitutional right was proper, appellate courts conduct a three-part inquiry. First, the court considers whether a district court abused its discretion when it found that a defendant's waiver of his right to be present at trial was knowing and voluntary. *Id.* at 769. Second, the court considers whether "there was a controlling public interest to continue the trial in spite of the defendant's absence." *Id.* There, "the court must consider the likelihood that the trial could take place with the defendant present, the difficulty of rescheduling, the inconvenience to jurors, and the burden on the government and others of having to undertake two trials, particularly in a multiple defendant case." *Id.* Third, if the appellate court concludes that "the district court erred either in finding a knowing and voluntary waiver or in continuing the trial in the defendant's absence, we consider whether the error was harmless in light of the record as a whole." *Id.*

Here, in order for the waiver to be voluntary, the Court should warn and press upon Mr. Ozomaro that the trial will proceed without him if he refuses to come to court for trial and that he would lose his right to represent himself. "[T]the proper reading of *Allen* requires a trial court to give the accused one last chance to comply with courtroom civility before committing

the 'deplorable' act—in the *Allen* Court's words—of removing that person from his own trial." *Gray v. Moore*, 520 F.3d 616, 624 (6th Cir. 2008) (citing *Allen*, 397 U.S. at 347, 90 S.Ct. 1057)).

### III. The Court Should Not Forcibly Bring Mr. Ozomaro to the Courtroom

The government argues that the Court can order Mr. Ozomaro forcibly brought to court, shackled and/or gaged, citing in support *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 1060–61 (1970). The *Allen* court held that a district court has three constitutionally permissive ways to deal with a defendant who is being unruly and disruptive during the trial: "(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Allen*, 397 U.S. at 344, 90 S. Ct. 1057. The court indicated that restraining defendant should be last resort and used only in extreme situations. *Id.* at 344.

In *Deck*, the Supreme Court held that the Constitution forbids the use of visible shackles during the guilty and penalty phase, and permits only when necessary for an essential state interest—such as the interest in courtroom security—specific to the defendant on trial. *Deck v. Missouri*, 544 U.S. 622, 629-632, 125 S. Ct. 2007, 2012 (2005). Both *Allen* and *Deck* indicate the court's distaste for use of force, shackles and gaging, permitting it only as a last resort in grave circumstances when necessary to carry out orderly proceedings and maintain security in the courtroom.

Here, the Court is faced with a different situation than in *Allen* and *Deck*. It is one thing to forcibly restrain a disruptive and violent defendant so that the trial can be conducted, and it is another thing to forcibly bring a defendant in the courtroom who wishes to waive his right to be present. Further, unlike in *Allen*, the Court did not warn Mr. Ozomaro that he will be

8

forcefully brought to the courtroom if he continues to refuse to attend. The courts held that "no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior." *Gray v. Moore*, 520 F.3d 616, 623 (6th Cir. 2008) (quoting *Allen*, 397 U.S. at 350, 90 S.Ct. 1057 (Brennan, J., concurring)). Moreover, a defendant's waiver under Rule 43(c) must be voluntary. *Sterling*, 738 F.3d at 236. Using force, shackles and gaging might call into question the voluntariness of Mr. Ozomaro's actions.

### IV. Waiver of the Right to be Present in Courtroom Can Constitute Waiver of Pro-Se Representation

Waiver of the right to be present at trial can also constitute a waiver of the right to self-representation. See *United States v. Pryor*, 842 F.3d 441, 449–50 (6th Cir. 2016). "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 2541 (1975). "The right to self-representation, though asserted before trial, can be lost by disruptive behavior during trial, constituting constructive waiver." *United States v. Dougherty*, 473 F.2d 1113, 1124 (D.C. Cir. 1972).

Before terminating his right to self-representation, the Court should warn Mr. Ozomaro that if he refuses to come to court or engages in disruptive behavior, he might lose his right. "The American Bar Association Standards for Criminal Justice also endorses this procedure: 'If a defendant who is permitted to proceed without the assistance of counsel engages in conduct which is so disruptive . . . that the trial cannot proceed in an orderly manner, the court should, after appropriate warnings, revoke the permission and require representation by

counsel.'" *Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008)(citing ABA Standards for Criminal Justice 6–3.9 (1986) (3d ed. 2000)).

### V.   The Speedy Trial Clock is Tolled During the Time Mr. Ozomaro Refuses to Appear at Trial

Under 18 U.S.C. § 3161(h)(3)(A), "[a]ny period of delay resulting from the absence or unavailability of the defendant" "shall be excluded in . . . computing the time within which the trial of any such offense must commence." Subsection (h)(3)(B) explains that defendant "shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." § 3161(h)(3)(B). A defendant "shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." § 3161(h)(3)(B).

Mr. Ozomaro's whereabouts are known (he is detained in the Newaygo County Jail) and jail staff stated that he refused to appear for trial. Thus, if the Court finds that he is "unavailable," the Speedy Trial clock is tolled from June 16, 2020, through the time he continues to refuse to attend trial.

Standby counsel disagrees with the government that section 3161(k) applies, setting a new 70-day speedy trial clock on July 24, 2020, when Mr. Ozomaro is supposed to appear for status conference. (See Government Brief, ECF 99, PageID372). The statute differentiate between a defendant being "absent" and "unavailable." See § 3161(h)(3)(B). Section 3161(k) applies only if a defendant is "absent." As stated above, Mr. Ozomaro is not "absent," but is "unavailable," because his whereabouts are known. Therefore subsection (k) does not apply to him and the speedy trial clock does not start anew on the July 24, 2020, appearance.

## VI.     Dismissing the Case

The government has discretion to decide which cases to prosecute.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.").  The government should consider moving to dismiss this case.  The unique circumstances of his case would not encourage other defendants to refuse to appear for trial.  Mr. Ozomaro is facing open murder – homicide and felony firearms charges in Kalamazoo, Michigan.  The open murder – homicide charges carry a maximum penalty of life.  The state investigation preceded the federal investigation.  The drugs that form the basis for the federal indictment were allegedly found during a search warrant that was requested for the murder investigation.  Dismissing the federal case would allow the state case proceed.

                                                              Respectfully submitted,

                                                              SHARON A. TUREK
                                                              Federal Public Defender

Dated:  July 1, 2020                    /s/ Sean R. Tilton
                                                             SEAN R. TILTON
                                                             Assistant Federal Public Defender
                                                             50 Louis, NW, Suite 300
                                                            Grand Rapids, Michigan 49503
                                                            (616) 742-7420